**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**STAVENA AKINS-BRAKEFIELD,**

    **Plaintiff,**

**v.**

**PHILIP ENVIRONMENTAL SERVICES
CORPORATION, PSC INDUSTRIAL
OUTSOURCING, LP, PHILIP SERVICES
CORPORATION, PHILIP HOLDINGS, LLC
and PSC, LLC**

    **Defendants.**                **Case No. 08-cv-710-DRH**

**MEMORANDUM & ORDER**

**HERNDON, Chief Judge:**

## I. Introduction

Before the Court is a Motion to Dismiss Counts I, III, V, VI, VII, VIII, IX and X of Plaintiff's Second Amended Complaint (Doc. 73), filed by defendant Philip Environmental Services Corporation ("PESC") (now known as "PSC Industrial Outsourcing, LP"), pursuant to FEDERAL RULES OF CIVIL PROCEDURE **12(b)(1)** and **12(b)(6)**. Plaintiff Stavena Akins-Brakefield has filed an opposing Response (Doc. 95), to which PESC has replied (Doc. 99), allowing the Court to address the issues presented.

Essentially, this is an employment discrimination case. Plaintiff, a

female, was employed as a Geologist/Environmental Scientist from July 2004 through March 21, 2007, when her employer terminated her at-will employment. Plaintiff alleges that Defendants,[1] collectively, were her employer, or joint employer, or in the alternative acquired or assumed the interests of her employer (Doc. 70 - 2d Am. Comp., ¶ 4).  The remainder of her factual allegations are recounted below:

Plaintiff was sexually harassed by her male co-workers on multiple occasions in 2004 and 2005, including being grabbed in the crotch in March 2005 and later being grabbed on her buttocks in April 2006 (*Id*. at ¶¶ 12, 13 & 18). Plaintiff verbally complained of sexual harassment to her employer's Human Resources ("HR") specialist in March 2005 (*Id*. at ¶ 14).  Plaintiff believes her employer's investigation into her complaint was inadequate (*Id*. at ¶ 15).  In June 2006, Plaintiff made another complaint to the HR specialist regarding the April 2006 incident where a co-worker grabbed her buttocks, as well as conveyed her belief that her employer was discriminating against her because of her sex (*Id*. at ¶ 19).  Again, she believes the investigation into her June 2006 complaint was inadequate (*Id*. at ¶ 20).  However, Plaintiff claims that two of her similarly situated male co-workers were given higher raises than she received[2] and were also promoted, sometime in the summer or early fall 2006 (*Id*. at 21).  Plaintiff again voiced her complaint of sexual

---

[1]  For clarification, the instant Motion to Dismiss (Doc. 73) is filed on behalf of only defendants PESC and PSC Industrial Outsourcing, LP – the name by which PESC is now known. Defendant Philip Services Corporation ("PSC") is now known as defendant Philip Holdings, LLC. Defendant PSC, LLC, assumed the assets of defendant PSC (now known as Philip Holdings, LLC) in October 2008.

[2]  Plaintiff received a 4% pay raise in August 2005 (*Id*. at ¶ 16).

discrimination to a project manager in September 2006 (*Id*. at ¶ 22).

In October 2006, Plaintiff requested to take leave pursuant to the Family and Medical Leave Act ("FMLA"), as a result of stress induced from being sexually harassed by her coworkers as well as discriminated against by her employer, based on her sex (*Id*. at ¶ 23). Plaintiff also contacted the corporate HR department to complain that the HR specialist had failed to adequately investigate her prior two verbal complaints of harassment and discrimination. She then reasserted her complaints to the corporate HR representative (*Id*. at ¶ 24). Plaintiff was told that the corporate HR department would wait until Plaintiff returned from her FMLA leave to inquire into the prior investigations regarding her harassment and discrimination claims made to the HR specialist (*Id*.). Due to Plaintiff's complaints that her male coworkers were receiving higher raises, in December 2006 she was given an additional pay raise, to be made retroactive to her last performance review date. Yet, Plaintiff believes this "correctional" pay raise was still not as much as similarly situated male employees received (*Id*. at ¶ 25).

Plaintiff returned back to work from her FMLA leave on January 8, 2007 (*Id*. at ¶ 26). The HR specialist told Plaintiff that she should "move forward and that if she could not put the past behind her, she could leave and the Company would give her 12 weeks severance pay" (*Id*. at ¶ 27). Plaintiff refused to leave her job (*Id*.). However, she believes she was thereafter shunned by certain coworkers and that several project managers refused to use her on projects (*Id*. at ¶ 28).

In late February 2007, Plaintiff contacted the corporate HR department

to again inquire as to whether it was following up on HR specialist's investigations into her complaints regarding sexual harassment and employment discrimination. The HR department representative told her that she could file a complaint with the Equal Employment Opportunity Commission ("EEOC") (*Id*. at ¶ 29).  On March 19, 2007, Plaintiff sent her completed Intake Questionnaire to the EEOC, claiming sex discrimination and retaliation by her employer (*Id*. at ¶ 30).  On March 21, 2007, four hours after Plaintiff informed the HR corporate department of her EEOC complaint, she was fired (*Id*. at ¶ 31).

Plaintiff's Second Amended Complaint (Doc. 70) brings ten counts against all Defendants:

Count I - Discrimination under Title VII

Count II - Discrimination under the Equal Pay Act ("EPA")

Count III - Retaliation under Title VII

Count IV - Retaliation under the EPA

Count V - Assault

Count VI - Battery

Count VII - Negligent Supervision

Count VIII - Willful Violation of the FMLA

Count IX - Discrimination under the Illinois Human Rights Act ("IHRA")

Count X - Retaliation under the IHRA

For the reasons discussed herein, the Court finds reason to grant in part and deny in part PESC's Motion to Dismiss (Doc. 73).

## II.  Legal Standard

**A.    Rule 12(b)(1)**

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) allows a party to raise as a defense a federal court's lack of subject matter jurisdiction over a plaintiff's claims. FED. R. CIV. P. 12(b)(1).  When a defendant makes this challenge, the plaintiff bears the burden of establishing jurisdiction.  The Court must "accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007) (citation omitted).  Yet, if necessary, the Court may also look beyond the jurisdictional allegations to evidence outside of the pleadings to determine whether federal subject matter jurisdiction exists.  *Id.* (citations omitted).

**B.    Rule 12(b)(6)**

When ruling on a motion to dismiss for failure to state a claim under FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6), the Court must look to the complaint to determine whether it satisfies the threshold pleading requirements under FEDERAL RULE OF CIVIL PROCEDURE 8.  Rule 8 states that a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Supreme Court held that Rule 8 requires a complaint to allege "enough facts to state a claim to relief that is plausible on its face" to survive a Rule 12(b)(6) motion.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

**(2007)**.  In other words, the Supreme Court explained it was "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' [by providing] more than labels and conclusions, [because] a formulaic recitation of the elements of a cause of action will not do . . . ."  ***Id.* at 555-56 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986))**.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' "  ***Ashcroft v. Iqbal*, --- U.S.---, --- 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557)**.

Recently, in ***Iqbal***, the Supreme Court made clear that the federal pleading standard under Rule 8 as discussed in its ***Twombly*** opinion applies "for all civil actions."  ***Id.* at ---, 129 S. Ct. at 1953**.  ***Iqbal*** identified the "two working principles" underlying the decision in ***Twombly***: (1) "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice;" and (2) "only a complaint that states a plausible claim for relief survives a motion to dismiss."  ***Id.* at ---, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555-56)**.  In short, a court should only assume to be true a complaint's well-pleaded factual allegations, and not its mere legal conclusions, when determining whether such allegations plausibly give rise to relief.  ***Id.* at ---, 129 S. Ct. at 1950**.

## III.  Discussion

**A.     Whether Plaintiff's Title VII Claims are Time-Barred**

PESC moves to dismiss the  Title VII discrimination claim in Count I and the Title VII retaliation claim in Count III of Plaintiff's Second Amended Complaint, on the grounds that they are time-barred (Doc. 73, pp. 7-8).  As a precondition to filing suit, a plaintiff must exhaust her administrative remedies under Title VII by filing a complaint with the appropriate federal or state agency. ***Dandy v. United Parcel Service, Inc.*, 388 F.2d 263, 270 (7th Cir. 2004) (citing *Volovsek v. Wis. Dep't of Agric., Trade & Consumer Prot.*, 344 F.3d 680, 687 (7th Cir. 2003))**.  As such, a plaintiff is required to file a complaint with the appropriate agency, such as the EEOC, within a certain number of statutorily-mandated days from the alleged discriminatory action.  ***See, e.g.*, 42 U.S.C. § 2000e-5(e)(1) (setting forth the time for filing charges with the EEOC)**.  Upon receiving a "right to sue" notice from the EEOC, a plaintiff then has ninety (90) days to file suit. **42 U.S.C. § 2000e-5(f)(1)**.  However, because the filing deadline for Title VII causes of action is not considered a jurisdictional requirement, "the timing and scope requirements of an EEOC filing are subject to various equitable doctrines . . . ." ***Volovsek*, 344 F.3d at 687**.

As previously stated, Plaintiff filed a charge of discrimination against her employer with the EEOC and the Illinois Department of Human Rights ("IDHR") on June 6, 2007 (Doc. 70, ¶ 32, Ex. 1).  She received her "right to sue" notice from the

EEOC on March 20, 2008 (*Id*. at ¶33, Ex. 2).  PESC notes that Plaintiff did not file her Complaint in this case (with the Title VII claims) until October 7, 2008 – which far exceeds the 90-day filing deadline set forth in **42 U.S.C. § 2000e-5(f)(1)**.  Therefore, PESC believes Plaintiff's Title VII claims should be dismissed for failure to state a claim upon which relief can be granted (Doc. 73, p. 8).

In response, Plaintiff argues that the Court should apply the doctrine of equitable tolling to her Title VII claims (Doc. 95).  As Plaintiff suggests, the 90-day period of limitations for filing Title VII claims in federal court may be equitably tolled, but only when warranted by the circumstances.  ***Jones v. Madison Serv. Corp.*, 744 F.2d 1309, 1314 (7th Cir. 1984)**.  One way of warranting the application of equitable tolling is by demonstrating that despite Plaintiff's diligent efforts, she was somehow prevented from preparing and filing suit within the statutory period, or could not determine the essential information necessary to properly file suit.  ***Lewis v. City of Chicago*, 528 F.3d 488, 493 (7th Cir. 2008) (citations omitted); *Ashafa v. City of Chicago*, 146 F.3d 459, 463 (7h Cir. 1998) (internal citations omitted)**.  Specifically, Plaintiff claims that she did, in fact, timely file her Title VII suit.

On June 13, 2008, Plaintiff filed her Complaint *pro se*, in Case No. 08-cv-438 (hereinafter the "initial suit"), against her former employer "Phillip Services Corporation" (Doc. 95, p. 1).  The defendant, identifying itself as "Philip Services Corporation," thereafter filed a motion to dismiss in the initial suit (hereinafter the

"initial motion to dismiss"), claiming it was the incorrect defendant and that Plaintiff was instead solely employed by PESC – a separate and distinct entity.  Supporting the assertions made in the initial motion to dismiss was a declaration by Andrea Kirkpatrick, who was the payroll administrator for Philip Services Corporation. Relying upon the initial motion to dismiss and the attached declaration, Plaintiff voluntarily dismissed the initial suit on October 7, 2008 and filed her Complaint (Doc. 2) against defendant PESC under the current case number 08-cv-710, that same day (*see* Doc. 95, p. 2).  Subsequent discovery led Plaintiff to believe that the initial motion to dismiss and attached declaration were "fraudulently deceptive as to the relationship between PESC and Philip Services Corporation, that in actuality they were one entity for employment purposes" (*Id*.).  Therefore, Plaintiff believes that *both* PESC and PSC can be considered her employer for Title VII purposes.  As such, she further believes she was correct in filing her initial suit against PSC and that the doctrine of equitable tolling should apply to allow her Title VII claims in the instant suit to be considered timely.

Reviewing Plaintiff's arguments and supporting exhibits, the Court finds that the evidence supports her theory that PESC, along with PSC, can both be considered proper Title VII defendants in this case and that the initial motion to dismiss misled Plaintiff to believe her initial suit against PSC was improper.  Two corporate entities will be considered a "single employer" if they are part of a "single integrated enterprise."  ***N.L.R.B. v. Western Temporary Serv., Inc.*, 821 F.2d 1258, 1266 (7th Cir. 1987)**.  Yet, this "integrated enterprise" test was considered

"too amorphous" and thus the Seventh Circuit found that the test should be abrogated for Title VII cases. ***Worth v. Tyer II*, 276 F.3d 249, 260 (7th Cir. 2001) (citing *Papa v. Katy Ind., Inc.*, 166 F.3d 937, 940-43 (7th Cir. 1999))**. Instead, the Seventh Circuit found three ways in which certain affiliated corporate entities can be considered proper Title VII defendants. *Id.* **at 259**. First, any of the entities that maintained an employment relationship with the plaintiff could be named as a defendant under Title VII. *Id.* **(citation omitted)**. Second, any of the entities found to have forfeited its limited liability could be considered a proper Title VII defendant. *Id.* **(citation omitted)**. The most common method of showing that an entity forfeited its limited liability is by piercing the corporate veil, "whereby corporate formalities are ignored and the actions of one company can accrue to another." *Id.* **(citation omitted)**. In order to pierce the corporate veil, the Court must find that a unity of interest and ownership exists between the two entities so that their separate corporate personalities no longer exist, and that continuing to treat the two entities as separate "would sanction a fraud or promote injustice." *Id.* **(citation omitted)**. The third way to find that affiliated corporate entities are proper Title VII defendants is when an entity is found to have succeeded its predecessors liability. *Id.* **at 260 (citation omitted)**.

Because neither Party claims that PESC succeeded PSC's liability, only the first two tests will be examined. Additionally, concerning the first test, because neither Party contests the notion that PESC employed Plaintiff, the Court need only

examine whether PSC also maintained an employment relationship with Plaintiff. If so, then PSC is a proper Title VII defendant, Plaintiff timely filed her Title VII claims against it in the initial suit (Case No. 08-cv-438), and PSC incorrectly asserted that it was not her employer in its initial motion to dismiss.  Regarding Plaintiff's Title VII claims against PESC, who was not named a defendant until the instant suit, equitable tolling will apply if Plaintiff prevails in the application of the second test, showing that she was unable to discern the proper employer despite diligent efforts because of the fact that PESC and PSC ignored corporate formalities and thereby accrued each others' actions with respect to Plaintiff's employment and subsequent termination.

To show that PSC maintained an employment relationship with Plaintiff, she offers evidence of her Separation Agreement (that she refused to sign), which begins by stating that the Agreement is "between Stavena Akins (the 'Employee') . . . and PHILIP SERVICES CORPORATION and its subsidiaries (collectively the 'Company')" (Doc. 95, Ex. 6).  Plaintiff further notes that the Separation Agreement reads, "the Employee is on the Company's payroll and considered a Company employee until March 2007" (*Id*.).  During PSC's corporate deposition, its corporate representative, Karen Mickelson Schunn, testified that this contractual language meant Plaintiff was on the payroll of PSC "and its subsidiaries" (Doc. 95, Ex. 3 - Schunn Dep., 142:23 - 143:23).  The Separation Agreement also contains signature blocks for Plaintiff and "PSC" but does not include signature blocks for any of PSC's "subsidiaries."  (Doc. 95, Ex. 6).  In fact, the signature block for PSC lists the name

"Mary Ellen Coombe" who is identified as "Vice President of Human Resources and Administrative Services" (Doc. 95, Ex. 6).  Schunn confirmed in her deposition that Mary Ellen Coombe works for PSC, not PESC (Doc. 95, Ex. 3, 143:24 - 145:10).

Plaintiff's Employment Agreement also appears as misleading as the Separation Agreement (Doc. 95, Ex. 5).  The Employment Agreement begins by stating that Plaintiff is "being offered and [is] accepting employment *with Philip Services Corporation (PSC) or a subsidiary thereof*, and from time-to-time may in the future be involved with other PSC-owned entities which will be referred to individually as "Company" and collectively as 'Companies' or as 'PSC-affiliates' " (Doc. 95, Ex. 5) (emphasis added).  Plaintiff also notes that Paragraph 9 of her Employment Agreement provides: "As used in this Agreement, the term 'Company' shall also include any corporation or entity which subsequently becomes a parent, owner, partner, subsidiary or affiliate of the Company . . ." (*Id.*).  Plaintiff's Employment Agreement never specifically states that she is employed by PESC. Instead, it is signed by Plaintiff and a person identified as a PSC corporate representative – not a *PESC* corporate representative (*Id.*).

Regarding her request for Short Term Disability ("STD") benefits, Plaintiff claims she received a letter from Prudential Insurance Company of America indicating that her request was submitted under the Group Plan issued to Philip Services Corporation (Doc. 95, p. 5, Ex. 16).  Further, Plaintiff's benefit issues were addressed by a PSC employee, Adrienne R. Lee, instead of a PESC employee (*Id.*, Ex. 3, 157:21 - 159:6).  Plaintiff also received letters directly from PSC regarding her

eligibility for STD benefits (*Id.*, Ex. 10) and her complaints of sexual harassment and wage discrimination (*Id.*, Exs. 12-13). She was also required to fill out a form for FMLA leave which displayed the PSC logo, rather than a PESC logo (*Id.*, Ex. 15).

The Court finds this evidence sufficient to plausibly demonstrate that PSC maintained an employment relationship with Plaintiff or at least created the appearance which could lead a reasonable person to believe that PSC maintained an employment relationship with Plaintiff. Therefore, under the first test, the Court finds PSC would be a proper Title VII defendant in this case. Yet, the Court must still look to whether equitable tolling should apply to allow Plaintiff's instant suit against both PSC and PESC to be considered timely, even though filed after the 90-day window.

The Court finds that the evidence discussed as part of the Court's analysis of the first test, when coupled with the following additional evidence, allows the Court to pierce the corporate veil between PSC and PESC so that they both may be considered proper Title VII defendants. First, Plaintiff states that at the time she entered into the Employment Agreement, PSC owned 100% of PSC Industrial Services, Inc., which owned 100% of PSC Environmental Services, Inc., which owned 100% of PESC (Doc. 95, p. 3, citing Ex. 3, 26:13 - 37:1). The same person was offered as the corporate representative to testify on behalf of both PSC and PESC for its corporate deposition in this case. (*Id.*, citing Exs. 3 & 4 - Rule 30(b)(6)

Depositions of PESC and PSC, corporate representative Karen Mickelson Schunn).[3]
Both PSC and PESC list the same Houston, Texas address as their principle place
of business/corporate headquarters (*Id*. at 4, citing Ex. 3, 47:21 - 49:11).   The
corporate deposition testimony also revealed that PSC companies share the same
confidential Ethics Hotline for lodging sexual harassment complaints (*Id*., citing Ex.
3, 149:4-10; 161:3-9).   Further, Plaintiff offers company materials she was given
during her employment such as memorandums, employee evaluation forms, letters,
and an FMLA notice form, all bearing the "PSC" logo (Doc. 95, Exs. 7-15).   Lastly,
Plaintiff states that PSC and PESC shared the same executives, including R. Dwayne
Ruiz, Michael Ramirez, E. Bradford Clark and Deborah Huston (*Id*., citing Ex. 3,
70:1 - 74:6; 75:6 - 76:8; 81:3 - 82:14; 83:20 - 85:6).

In sum, it appears that a unity of ownership and interest exists between
PSC and PESC.   Further, to continue to adhere to the fictional corporate entity in
this case would promote an injustice in that Plaintiff would be time-barred from suit.
These findings thereby allow the Court to pierce the corporate veil between PSC and
PESC for Plaintiff's employment purposes, finding both entities to be proper Title VII
defendants.   Plaintiff's theory that both PSC and PESC held themselves out to be her
employers is believable and supported by the evidence.   It was reasonable for
Plaintiff, who filed her initial Complaint *pro se*, to believe that her employer was PSC
instead of PESC.   Upon being informed otherwise via PSC's initial motion to dismiss,

---

[3]  Schunn testified that she works as an in-house legal assistant who maintains custody of
the corporate books, and reports to the General Counsel.

Plaintiff states that she voluntarily dismissed her suit in good faith, based upon PSC's representation that it was a distinct entity from PESC – Plaintiff's true employer.  Because the Court finds PSC's assertion to be incorrect under the law as analyzed *supra*, it will equitably toll the filing deadline for Plaintiff's Title VII claims against PESC (and PSC Industrial Outsourcing, LP – the name by which PESC is now known) in this case.   Accordingly, Counts I and III of her Second Amended Complaint will not be dismissed against PESC, but instead will be considered timely filed.[4]

## B.   Whether the Court Has Jurisdiction Over Plaintiff's IHRA Claims

PESC next moves to dismiss Counts IX and X of Plaintiff's Second Amended Complaint, which plead causes of action for discrimination and retaliation,

---

[4]The Court finds as unavailing PESC's argument in its Reply that Plaintiff's "fraudulent deception" claims supporting her request for equitable tolling have been previously heard and denied in the initial case (No. 08-cv-438) as part of her Rule 60(b) motions to reinstate the case and following as grounds for her ongoing appeal in the initial case (Doc. 99, pp .1-2).  In the initial case, Plaintiff did, in fact, file a Rule 60(b) motion to reinstate the case based on Defendants' alleged fraudulent deception that PSC was not her employer or was a complete separate entity from PESC (*see* Case No. 08-cv-438, Doc. 15).  The Court in Case No. 08-cv-438 denied the initial Rule 60(b) motion in a minute entry order, simply stating that Plaintiff had voluntarily dismissed her suit and that counsel should advise the undersigned Judge in this case of its Order denying the motion (*see* Case No. 08-cv-438, Doc. 24).  Plaintiff's second Rule 60(b) motion was also denied in the initial case (*see* Case No. 08-cv-438, Doc. 33), based on the finding that the Court was deprived of jurisdiction due to Plaintiff's pending appeal, filed before her second Rule 60(b) motion (*see* Case No. 08-cv-438, Doc. 34).  Therefore, a decision on the merits of Plaintiff's "fraudulent deception" claim was never reached, or, it was never "actually litigated." ***See Dal Corobbo v. I.R.S.*, 228 F.R.D. 624, 626 (S.D. Ill. 2005) (citing *Chicago Truck Drivers v. Century Motor Freight, Inc.*, 125 F.3d 526, 530 (7th Cir.1997)(collateral estoppel applies where (1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action))**.  Additionally, the Court notes that while Plaintiff's appeal of the initial case (Appeal Case No. 09-1179) is still pending before the Seventh Circuit, it suspended briefing on February 20, 2009, pending further court order.

respectively, pursuant to the Illinois Human Rights Act ("IHRA"), **775 ILL. COMP. STAT. 5/1-101 - 5/10-104**.  PESC bases its dismissal argument on the grounds that the Court lacks subject matter jurisdiction over these counts for Plaintiff's failure to previously exhaust her administrative remedies (Doc. 73, pp. 12-13).  Counts IX and X were not added to this suit until Plaintiff filed her Second Amended Complaint, on May 22, 2009 (Doc. 70).  Although the IHRA was amended in 2008 to allow a complainant to file IHRA claims directly in court, the amendment only applies to charges filed after January 1, 2008.  For charges preceding the January 1, 2008 date, a complainant must first bring the charge before the Illinois Department of Human Rights ("IDHR").  *See Blount v. Stroud*, **904 N.E.2d 1, 7 (Ill. 2009)**. Although Plaintiff did this, PESC contends that Plaintiff never received a final order from the Human Rights Commission before amending her Complaint to include her IHRA claims in Counts IX and X and therefore, she has not yet exhausted all of her administrative remedies.  In response, Plaintiff counters that she did exhaust her administrative remedies regarding her IHRA claims and therefore, the Court has proper jurisdiction to consider these causes of action.  Reviewing the applicable supporting documents and statutory law, the Court finds Plaintiff has failed to exhaust her administrative remedies with the IDHR prior to filing her IHRA claims in this suit and therefore, the Court lacks jurisdiction over them.

Reviewing the IDHR Charge of Discrimination Form (Doc. 95, Ex. 21), the Court notes an initial filing date of June 1, 2007, which is when Plaintiff claims

she submitted her Title VII charges to the EEOC.  However, because of a work-sharing agreement, the IDHR also deems Plaintiff's IHRA charges filed as of that date.  *See* **775 ILL. COMP. STAT. 5/7A-102(A-1) ("A charge filed with the Equal Employment Opportunity Commission within 180 days after the date of the alleged civil rights violation shall be deemed filed with the Department on the date filed with the Equal Employment Opportunity Commission.")**.  This contemporaneous filing date is also confirmed by a letter sent from the IDHR to Plaintiff, dated December 5, 2007, which stated in part:

> The [EEOC] and the [IDHR] are parties to a cooperative agreement.  Under this agreement, *when you filed your charge of discrimination with the EEOC it was automatically filed with the Department*.

(*Id.*, Ex. 18) (emphasis added).  Therefore, unlike Plaintiff proffers, there is no question as to whether her IHRA charges filed with the IDHR was before or after the January 1, 2008.  The applicable filing date is the same date as when Plaintiff filed charges with the EEOC – June 1, 2007 – and as such, the IHRA provisions existing prior to its amendment apply.

The IDHR's December 5, 2007 letter continued:

> This letter is to inform you that you may proceed with your charge at the [IDHR].  **This does not affect the processing of your charge at EEOC**.  If you with to proceed with the [IDHR], you must notify the [IDHR] in writing of your decision, either by mail or in person, within 35 days of receipt of this letter.

(*Id.*) (emphasis in original).

Plaintiff complied, sending IDHR a timely letter, dated January 1, 2008,

affirmatively stating that she wished to proceed with charges at the IDHR (*Id*., Ex. 19).   On January 28, 2008, the IDHR sent another Plaintiff another letter, acknowledging the receipt of her January 1, 2008 letter requesting proceedings before the IDHR and instructing Plaintiff to do the following:

> Now that you received your final finding from the EEOC the next step is to have your charge **notarized**, and return to the [IDHR] **within thirty-five (35)** days of receipt of this letter.
>
> \*\*\*
>
> Upon receipt of the perfected charge, [IDHR] may adopt the EEOC determination and findings.

(*Id*., Ex. 20) (emphasis in original).   In compliance with this instruction, Plaintiff mailed her notarized Charge of Discrimination to the IDHR on February 18, 2009 (*Id*., Ex. 21).   Plaintiff received a following letter from the IDHR, dated April 14, 2009, acknowledging her discrimination charge under the IHRA and assigning it a charge number.   The IDHR's April 14, 2009 letter further stated in part:

> You have the right to file a complaint with the Human Rights Commission or commence a civil action in the appropriate circuit court, if the Department of Human Rights (DHR) has not completed your case by issuing its report of findings within 365 days from the date you filed your PERFECTED signed and notarized charge or within any extension of that time to which you and the Respondent have agreed in writing.
>
> **Within 90 days of the expiration of the 365 days . . . if you so choose, you may file a complaint with the Human Rights Commission or commence a civil action in the appropriate circuit court.**

(*Id*., Ex. 22) (emphasis in original).

Thereafter, on April 23, 2009, Plaintiff received a "Notice of Dismissal"

(the "Notice") from the IDHR, dated April 21, 2009, dismissing her charges of harassment, discrimination and retaliation against Defendants, brought pursuant to the IHRA (Doc. 95, p. 12, Ex. 23). The Notice stated that the IDHR had adopted the EEOC determination of no cause (a copy of which was attached to the Notice), thereby finding that there was *not* substantial evidence to support the allegations of Plaintiff's charges and therefore, the charges were dismissed pursuant to Section 7A-102(D) of the IHRA (Doc. 95, Ex. 23, citing **775 ILL. COMP. STAT. 5/7A-102(D)**). One day after receiving the IDHR's Notice of Dismissal, Plaintiff states that she sought leave to file a Second Amended Complaint in order to timely add her IHRA claims as Counts IX and X (*see* Doc. 65).

Plaintiff asserts that she properly exhausted her administrative remedies on her IHRA claims with the IDHR, offering the language of the IDHR's April 14, 2009 letter which instructed that she had "the right to . . . commence a civil action in the appropriate circuit court. . ." (Doc. 95, pp. 14-15). However, as PESC points out in its Reply (Doc. 99, pp. 3-4) and the Court agrees, Plaintiff misinterprets the instructions provided by the IDHR in its April 14, 2009 letter (Doc. 95, Ex. 22). Instead, as shown from the portions of the letter cited previously by the Court in this Order, Plaintiff was only allowed the option of filing a complaint with the Human Rights Commission or commencing a civil action in court *if* the IDHR did not complete her case by issuing its report of findings within 365 days from the date she filed her perfected signed and notarized charge. The IDHR, however, did not take more than 365 days to issue its report of findings. In fact, it was only a week later

that the IDHR issued its Notice of Dismissal, dated April 21, 2009 (*Id.*, Ex. 23).  As

such, Plaintiff did not have the right to thereafter file a civil suit.  This is further

confirmed by the fact that the IDHR's April 21, 2009 Notice of Dismissal regarding

Plaintiff's IHRA charges did not state that Plaintiff now had the option of filing a civil

suit, but instead, stated:

> If Complainant disagrees with this action, Complainant may seek
> review of this dismissal before the CHIEF LEGAL COUNSEL
> (CLC) . . . by filing a "Request for Review" with the CLC within
> thirty (30) days after receipt of this Notice, by the request for
> review filing date above [May 26, 2009].

(*Id.*) (emphasis in original).

Again, the Court notes that the IDHR's dismissal of Plaintiff's IHRA

charges was made pursuant to Section 7A-102(D) of the IHRA.  The version of

Section 7A-102(D) prior to its January 1, 2008 amendment and thus applicable to

Plaintiff's IHRA claims, provided:

> If the Director determines that there is no substantial evidence,
> the charge shall be dismissed by order of the Director and the
> complainant [may] seek review of the dismissal order before the
> Chief Legal Counsel of the Department.  The complainant shall
> have 30 days from the receipt of notice to file a request for review
> by the Chief Legal Counsel of the Department.

**775 ILL. COMP. STAT. 5/7A-102(D)(3)**.  This statutory language was mirrored in the

IDHR's Notice of Dismissal.  As Plaintiff correctly points out in her Response, a

reviewing court should give substantial weight and deference to any agency's

interpretation of agency law, such as the IDHR's interpretation of Plaintiff's review

rights under the IHRA (Doc. 95, p. 15, citing ***Wanless v. Human Rights Comm'n,***

**695 N.E.2d 501, 502 (Ill. App. Ct. 1998)**).  Further, Plaintiff cites to a non-precedential opinion of a sister district court which holds that for IHRA charges filed with the IDHR prior to January 1, 2008, a court "lacks jurisdiction to do anything other than review or enforce final orders of the IHR Commission."  (Doc. 95, p . 15, citing *Alexander v. Northeastern Ill. Univ.*, **586 F. Supp. 2d 905, 910 (N.D. Ill. 2008) (citing 775 ILL. COMP. STAT. 5/7A-102** and **775 ILL. COMP. STAT. 5/8-11(B)-(C);** *Talley v. Wash. Inventory Serv.*, **37 F.3d 310, 312-13 (1994)**).  Here, the Court finds a final order never issued, as Plaintiff does not submit that she filed for review of the IDHR's dismissal of her IHRA charges with the Chief Legal Counsel, as the Notice of Dismissal instructed her to do.  Therefore, her IHRA claims in Counts IX and X of her Second Amended Complaint are dismissed for Plaintiff's failure to properly exhaust her administrative remedies, thus depriving the Court of jurisdiction to consider them upon review.[5]

**C.      Whether Plaintiff's FMLA Claim Pleads a "Willful" Violation**

Count VIII of Plaintiff's Second Amended Complaint states a cause for willful violation of the Family Medical Leave Act ("FMLA"), claiming she was wrongfully terminated from employment on March 21, 2007 for taking FMLA leave.

---

[5]  PESC also argued for dismissal of Plaintiff's "concomitant" IHRA claims in Counts IX and X on the grounds that she merely "repackaged" her EEOC charges in a later-filed charge with the IDHR and that her time for filing these IHRA claims should run from the date of the EEOC's Right to Sue notice, not the subsequent dismissal by the IDHR (Doc. 73, pp. 9-12).  In other words, PESC posits that Counts IX and X are, in reality, merely "cloaked" Title VII claims.  The Court finds no merit in this argument: as demonstrated in its exhaustion of administrative remedies analysis, Plaintiff followed proper procedures by filing her claims with the IDHR after her EEOC charge.

A claim filed under the FMLA is normally subject to a two-year statute of limitations. **29 U.S.C. § 2617(c)(1)**. Plaintiff first brought forth her FMLA claim in Count VIII when she filed her First Amended Complaint (Doc. 58), on April 17, 2009. Therefore, PESC asserts that Count VIII was brought past the two-year filing deadline and must be dismissed (Doc. 73, pp. 13-15). Plaintiff, on the other hand, argues that the three-year statute of limitations for claims of *willful* violations of the FMLA should apply (Doc. 95, pp. 16-17). **29 U.S.C. § 2617(c)(2)**. Plaintiff further argues that even if she has failed to adequately plead a claim for willful FMLA violation, Count VIII should "relate back" to her initial Complaint, filed October 7, 2008, pursuant to **Federal Rule of Civil Procedure 15(c)**. PESC contends, however, that Plaintiff altogether fails to plead a claim for an FMLA violation with the requisite specificity set forth required by the Supreme Court in ***Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)** and ***Ashcroft v. Iqbal*, --- U.S.---, --- 129 S. Ct. 1937, 1949 (2009)**, let alone plead a claim for a *willful* violation (Doc. 73, pp. 13-14).

The FMLA allows eligible employees to take up to twelve work weeks of unpaid leave in any twelve-month period due to certain events, including a serious health condition. ***Lewis v. School Dist. #70*, 523 F.3d 730, 741 (7th Cir. 2008) (citing *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999))**. After returning from leave, the FMLA provides that an employee must be reinstated to the same position or an equivalent with the same benefits and terms of

employment as before leave was taken.  *Id.* **(citing 29 U.S.C. § 2614(a))**.  Therefore, , it is unlawful for the employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the FMLA.  *Id.*  **(citing *King*, 166 F.3d at 891, citing 29 U.S.C. § 2615(a)(1)**.  The FMLA further prohibits employers "from discriminating against employees . . . who have used FMLA leave." *Id*. **(citing *King*, 166 F.3d at 891, citing 29 C.F.R. § 825.220(c))**.  As such, employees choosing to exercise their rights under the FMLA are thereby protected from being retaliated against by their employers for doing so.  *Id.* **(citing *King*, 166 F.3d at 891, citing 29 U.S.C. § 2615(a)(1) & (2))**.

Plaintiff's claim of "Willful Violation of the FMLA" in Count VIII appears to be one of retaliation/discrimination and not interference with her FMLA rights, as Plaintiff alleges that she did, in fact, take the entire twelve weeks of leave.  PESC argues Plaintiff's allegation that she "was terminated as a result of her taking FMLA leave" (Doc. 70, p. 19, ¶ 93) is merely conclusory.  However, in the preceding paragraph of Count VIII, Plaintiff alleges that "[i]mmediately upon [her] return from FMLA leave, on January 8, 2007, Defendants arranged a meeting in which the HR Specialist discussed [Plaintiff's] condition and medical restrictions and the possibility that [she] may receive a severance package" (*Id*. at ¶ 92).  The Court finds that this allegation, when coupled with her allegation that she was terminated as a result of taking FMLA leave meets the pleadings standards under **Bell** and **Iqbal** to plead a claim of a violation of the  FMLA.

The Seventh Circuit has yet to define "willful" as applied to an FMLA claim (the FMLA itself does not define the term), but other courts have adopted the definition set forth by the Supreme Court in **McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)**, requiring a showing that the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FMLA]." **See Poteet v. Potter**, No. IP00-0712-C-Y/S,**2005 WL 1115805 at *23 (S.D. Ind. Mar. 28, 2005) (collecting cases)**.[6] Here, Plaintiff has captioned Count VIII as "willful violation" but does not allege her employer acted with reckless disregard when it terminated her.  Nevertheless, because this is not yet a requisite element established by precedential law, then based on the pleading requirements of **Bell** and **Iqbal**, the Court finds that the factual allegations, when construed in the light most favorable to Plaintiff, plausibly state a claim for a willful violation of the FMLA.  Therefore, the Court finds the three-year statute of limitations applies and Count VII is considered timely filed.  However, in the alternative, the Court also finds that Count VIII may relate back to Plaintiff's initial Complaint (Doc. 2) under **Rule 15(c)(1)(B)**, as it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." **FED. R. CIV. P. 15(c)(1)(B)**.  As Plaintiff's initial Complaint was filed on October 7, 2008 and thus is within the two-year statute of limitations from the date of her termination in March 2007, her Count VIII is timely filed under the relation-

---

[6] In **McLaughlin**, the Supreme Court was actually determining the definition of "willful" in regards to a claim made pursuant to the Fair Labor Standards Act.

back doctrine.  In short, Count VIII survives dismissal.

**D.    Whether Plaintiff's Claims of Assault, Battery and Negligent Supervision are Time-Barred**

Lastly, PESC moves for dismissal of the following Illinois common law causes of action pled in Plaintiff's Second Amended Complaint on the grounds that they are barred by the applicable two-year statute of limitations: Count V - Assault, Count VI - Battery, and Count VII - Negligent Supervision (Doc. 73, pp. 15-16). Plaintiff opposes dismissal, but does not specifically contest PESC's assertion that these types of personal injury claims, under Illinois law, are subject to a two-year statute of limitations (*see* Doc. 95, pp. 17-18).   The Court finds that as PESC suggests, under Illinois law, causes of action for assault, battery and negligent supervision are subject to a two-year limitations period.[7] ***See Hollander v. Brown, 457 F.3d 688, 692 (7th Cir. 2006) (stating that assault and battery claims are considered personal injury actions and applying two-year statute of limitation set forth in 735 ILL. COMP. STAT. 5/13-202); see also Williams v. Ali, 495 N.E.2d 1052, 1053 (Ill. App. Ct. 1986) (applying same for civil claim of sexual assault); Finnane v. Pentel of America, 43 F. Supp. 2d 891, 904 (N.D. Ill. 1999) (two-year Illinois personal injury statute of limitations in 735 ILL. COMP. STAT. 5/13-202 applies to claims of negligent supervision); Marks v. Rueben H. Donnelley, Inc., 636 N.E.2d 825, 827 (Ill. App. Ct. 1994).***

---

[7]  Plaintiff's Illinois common law causes of action are subject to the Court's supplemental jurisdiction, per **28 U.S.C. §1367**.

These three counts all include allegations regarding incidents of sexual assault and battery and negligent supervision, occurring on or about February 28 through March 9, 2005, and again on April 22, 2006 (*see* Doc. 70, ¶¶ 69, 73, 76 and 78). Plaintiff did not add these three counts until her First Amended Complaint, filed on April 17, 2009 (Doc. 58). This is well beyond the two-year limitations period. Plaintiff first argues that the limitations period should not begin to run until the date of her termination, March 21, 2009, because PESC previously stated in its related Motion for Sanctions that "the latest Plaintiff could have brought those [three counts] was March 21, 2009, two years after PESC terminated Plaintiff's employment" (Doc. 95, p. 17, citing Doc. 89, p. 4, ¶ 19). The Court first notes that PESC, in its Motion to Dismiss, does not make this same statement, but instead, believes the limitations period should begin to run on the dates of the two incidents alleged in Plaintiff's Counts V through VII: March 9, 2005 and April 22, 2006 (Doc. 73, p. 16). Regarding Defendant's earlier statement in its Motion for Sanctions, the Court does not agree that the limitations period should not have run until the date of Plaintiff's termination. Plaintiff has not argued that either the equitable tolling or the continuing violation doctrine should apply to these counts. In any event, the germane allegations fail to set forth any facts which would allow the Court to deduce that the limitations period should begin any later than April 22, 2006. Therefore, her claims should have been filed no more than two years later. Plaintiff's further argument that even though the acts began on the stated dates, "the question of when the insulting and provoking nature of the acts ceased is one for the jury to

determine" is also unavailing, as without being timely filed, this question will not reach a jury.

Lastly, Plaintiff argues that these three counts should relate back to the filing date of her initial Complaint, which was filed on October 7, 2008 (Doc. 2). However, even this would be outside of the applicable two-year statute of limitations period and will not serve to keep Counts V, VI and VII from being time-barred. Accordingly, they should be dismissed.

## IV. <u>Conclusion</u>

The Court **GRANTS IN PART** and **DENIES IN PART** PESC's Motion to Dismiss (Doc. 73) as follows:

- Plaintiff's Title VII claims in Counts I and III survive dismissal against PESC (and PSC Industrial Outsourcing, LP) via application of the equitable tolling doctrine;

- Plaintiff's IHRA claims in **Counts IX and X** are **DISMISSED WITHOUT PREJUDICE** against PESC (and PSC Industrial Outsourcing, LP) for her failure to exhaust her administrative remedies with the IDHR before filing her claims;

- Plaintiff's FMLA claim in Count VIII survives dismissal against PESC (and PSC Industrial Outsourcing, LP), the Court finding that her claim contains sufficient allegations to show a willful violation for the three-year statute of limitations to apply, making it timely-filed or, in the alternative, the relation-back doctrine of Rule 15(c) applies, to use the filing date of the original Complaint, which falls within the applicable two-year statute of limitations for non-willful FMLA violations; and

- Plaintiff's claims of Assault, Battery and Negligent Supervision in **Counts V, VI and VII**, respectively, are **DISMISSED WITH PREJUDICE** against PESC (and PSC Industrial Outsourcing, LP), as being time-barred under the applicable two-year statute of limitations and also because the relation-back doctrine would still put these counts

outside of the two-year window.

Thus, the remaining counts against PESC (and PSC Industrial Outsourcing, LP) are:

Counts I, II, III, IV, and VIII.

**IT IS SO ORDERED**.

Signed this 17th day of March, 2010.

/s/   David R Herndon

**Chief Judge**
**United States District Court**

Page 28 of 28